2009 BNH 015
_____

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

In re:                                                                           Bk. No. 08-11242-MWV
                                                                                                Chapter 7
James R. Naugler,
           Debtor

James R. Naugler,
           Plaintiff

v.                                                                             Adv. No. 08-1100-MWV

Ken Carlini,
           Defendant


Ken Carlini,
           Plaintiff

v.                                                                             Adv. No. 08-1106-MWV

James R. Naugler,
           Defendant


*Arthur O. Gormley, III, Esq.*
*GORMLEY & GORMLEY, PC*
*Attorney for James R. Naugler*

*Grenville Clark, Esq.*
*GRAY, WENDELL & CLARK, PA*
*Attorney for Ken Carlini*


**MEMORANDUM OPINION**

       The Court has before it two adversary cases which have been disposed of in one opinion because

the parties and underlying facts are the same in each case. The first case concerns a complaint filed by

James R. Naugler ("Naugler") against Ken Carlini ("Carlini") asserting willful violation of 11 U.S.C. § 362(a)(6).[1] The second case concerns a complaint filed by Carlini against Naugler asserting various claims for excepting a debt from discharge under the Bankruptcy Code. The Court held a one-day trial on June 5, 2009, and continued the trial until June 25, 2009, for the Court's ruling.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

Beginning in February 2005 until March 2008, James R. Naugler was the sole incorporator and sixty-percent stock holder in the New Hampshire corporation named Del Vaudo's Restaurant and Lounge, Inc. (the "corporation" or the "restaurant"). The corporation was in the business of operating an eatery, bar, and lounge where bands often played. In early 2007, Carlini became interested in investing in the restaurant. After the parties entered into discussions, Carlini loaned the restaurant $25,000 and received 300 shares of stock that represented a twenty-percent ownership. According to a vote by the Board of Directors of the corporation, the stock issued to Carlini was in exchange for Carlini co-signing a commercial loan to be obtained by the corporation in the amount of $125,000. Thereafter, Carlini would be repaid his initial $25,000 loan, but retain his stock. Carlini then frequented the restaurant, assisted in operations, and obtained access to and actually viewed the restaurant's financial records and bank

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

accounts. Carlini provided the restaurant with various loans in payment for business-related expenses.

When the corporation was not able to obtain the commercial loan, Carlini loaned Naugler an additional $125,000 in disbursements, in exchange for Naugler signing a promissory note both in Naugler's individual capacity and on behalf of the corporation. By the time the restaurant ceased to operate, Carlini had made advances and loans to the restaurant totaling $134,672.45. On May 7, 2008, Naugler, in his individual capacity, filed a voluntary Chapter 7 petition. Carlini and other creditors of the restaurant were listed in Naugler's bankruptcy petition, but no co-debtors were listed in the schedules. Carlini contacted Naugler "a few times" after the commencement of Naugler's bankruptcy case. Naugler initiated Adversary Proceeding No. 08-1100-MWV pursuant to § 362(a)(6) alleging Carlini willfully violated the automatic stay. Soon after, Carlini filed his own Adversary Proceeding No. 08-1106-MWV alleging that Naugler should be denied a discharge under several provisions of the Bankruptcy Code.

## DISCUSSION

The chronology of events suggests that the Court discuss the second adversary case first. In his complaint, Carlini asserts four counts against Naugler. Those counts, in the order discussed below, are as follows: (1) Count I excepting a debt from discharge pursuant to § 727(a)(5) for failure to explain loss of assets; (2) Count II excepting a debt from discharge under § 727(a)(4)(A) for making a false oath in connection with the bankruptcy case; (3) Count III excepting a debt from discharge pursuant to § 523(a)(2)(A) for incurring a debt by use of false pretenses, false representation, and actual fraud; and (4) Count IV excepting a debt from discharge under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity. The Court will then discuss Naugler's complaint against Carlini asserting willful violation of the automatic stay pursuant to § 362(a)(6). Carlini prays this Court excepts from discharge the debts owed to him by Naugler. Naugler seeks to recover an injunction against Carlini from contacting anyone regarding Naugler's bankruptcy filing, punitive damages, and attorney's fees and

costs.

### I. Carlini v. Naugler

"Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's fresh start policy." Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 66 (1st Cir. 2004) (internal quotations omitted). The statutory right to a discharge is ordinarily "construed liberally in favor of the debtor[.]" Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997) (internal quotations omitted). However, the purpose of § 727(a) "is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." In re Schifano, 378 F.3d at 66 (internal quotations omitted). The plaintiff has the burden of proving an objection to discharge. Fed. R. Bankr. P. 4005.

#### A. Count I: Failure to Explain Loss of Assets

The Court begins its discussion with Count I, which seeks to except from discharge the debt owed to Carlini pursuant to 11 U.S.C. § 727(a)(5). In his complaint, Carlini asserts that Naugler made "large unexplained withdrawals from the restaurant's bank account" and failed to explain his use of the business account to pay for personal expenses. (Compl. ¶ 22.) Under § 727(a)(5), discharge will be denied if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The party objecting to discharge has the initial burden of showing, by a preponderance of the evidence, that the debtor has failed to satisfactorily explain a loss of assets. Rhode Island Depositors Economic Protection Corp. v. Hayes (In re Hayes), 229 B.R. 253, 259 n.7 (B.A.P. 1st Cir. 1999). The "plaintiff must introduce more than merely an allegation that the debtor has failed to explain losses . . . the objector must produce some evidence of the disappearance of substantial assets or of an unusual transaction which disposed of assets." The CIT Group/Sales Financing, Inc. v. Lord (In re Lord), 244 B.R. 196, 202 (Bankr. D.N.H. 1999). "Once the loss of an asset is established, § 727(a)(5) turns to the plausibility of the debtor's explanation." Id. The debtor need not be meritorious, but he must

convince the Court that he has not hidden or improperly shielded assets.  See id.

During trial, Carlini offered no evidence beyond re-stating his allegations that Naugler withdrew large amounts of cash from the business account, and that Carlini did not know how the withdrawals were used.  Carlini also testified that the restaurant's cash sales did not appear to have been deposited in the business account, and Carlini was unaware of "where the cash went."  Carlini's witness, Peter McGovern ("McGovern"), testified that his review of the accounting records accurately reflected cash sales coming into the restaurant, but did not see bank statements showing where the cash was transferred.  Although McGovern testified that the balance sheet he reviewed (Carlini's Ex. 14) "made little sense" from an accounting standpoint, he stated that the "Transaction by Account" did show entries of where the cash might have gone. (Carlini's Ex. 12.)  That is, the cash was used to pay vendors, the bands that played at the restaurant, and tips from credit card charges.  McGovern also conceded that withdrawal of bank checks would require cash payments, and he understood it to be true that Naugler paid certain debts on a cash basis.  Moreover, Naugler's testimony corroborated the entries shown on the balance sheet.  Carlini has failed to meet his burden of proof in showing beyond mere allegations that Naugler has failed to explain loss of assets.  Additionally, the Court is satisfied by the proffered explanation provided through testimony and exhibits presented at trial.  Count I is denied.

      **B.**      **Count II: False Oath or Account**

"A debtor's Schedules and Statement of Financial Affairs are unsworn declarations made under penalty of perjury and are, according to federal law, the equivalent of a verification under oath." Smith v. Grondin (In re Grondin), 232 B.R. 274, 276 (B.A.P. 1st Cir. 1999).  Under § 727(a)(4)(A), discharge will be denied if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]"  11 U.S.C. § 727(a)(4)(A).  To prevail on a § 727(a)(4)(A) claim, the plaintiff must show that the debtor (1) knowingly and fraudulently made a false oath and (2) the false oath is material to the case.  In re Schifano, 378 F.3d at 67.  A fact is "material" if it is "pertinent to the discovery of assets,

including the history of a bankrupt's financial transactions." In re Mascolo, 505 F.2d 274, 277 (1st Cir. 1974). The plaintiff bears the initial burden of proof in showing that the defendant made a false oath knowingly and fraudulently, then "the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged." Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (internal quotations omitted).

Carlini argues that Naugler knowingly and fraudulently made a false oath when he listed the restaurant's creditors in Schedule F, but did not list the restaurant as a co-debtor on Schedule H. (Carlini's Ex. 1.) This matter is material because it relates to Naugler's business dealings. In re Tully, 818 F.2d at 111. At trial, Naugler testified that he did not even know until the trial that he made a false oath. Naugler stated that his attorney prepared the bankruptcy petition, and Naugler provided his attorney with a list of creditors of both the restaurant and himself. Further, Naugler stated that he had no intent to hide anything or confuse the Court. Naugler was obligated to personally pay the debts of the restaurant as he was required to sign the debts in his name. Consequently, he listed all the debts he owed and all the debts the restaurant owed on Schedule F (Carlini's Ex. 1), because he believed that the creditors of the restaurant were creditors of him personally. By listing the creditors in Schedule F, all of the co-debtor creditors received notice of the bankruptcy. It is has been widely held by many courts that mistake, carelessness, reliance on counsel who was fully aware of the facts, ignorance, or honest error negates an inference of fraud. See In re Mascolo, 505 F.2d at 277 (1st Cir. 1974); accord Gullickson v. Brown (In re Brown), 108 F.3d 1290, 1295 (10th Cir. 1997). Accordingly, the Court finds that Naugler did not "knowingly and fraudulently" make a false oath in connection with his bankruptcy case. Count II is denied.

      **C.**    **Count III: False Pretenses, False Representation, and Actual Fraud**

Carlini alleges that Naugler knowingly made a false representation by representing that all

obligations of the restaurant were revealed to Carlini, that the restaurant was making $10,000 a week, and that all bills were current.  Carlini further alleges that those misrepresentations led him to advance a total of $134,672.45 to Naugler.  Section 523(a)(2)(A) of the Bankruptcy Code provides:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
> . . .
>     (2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by –
>         (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

11 U.S.C. § 523(a)(2)(A).  "The burden of proof and the burden of production as to each element rests with the party contesting the dischargeability of a particular debt under Bankruptcy Code § 523." Palmacci, 121 F.3d at 787.  To establish that a debt is non-dischargeable under § 523(a)(2)(A), the objecting creditor must prove the following elements:

    1. The debtor made a knowingly false representation;

    2. The debtor did so with fraudulent intent, i.e., with "scienter;"

    3. The debtor intended to induce the creditor to rely on the misrepresentation;

    4. The misrepresentation induced reliance;

    5. Reliance was justifiable; and

    6. Reliance on the misrepresentation caused damage (pecuniary loss).

See McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001); Palmacci, 121 F.3d at 786; and Reilly v. Beeman (In re Beeman), 225 B.R. 522, 528 (Bankr. D.N.H. 1998).

    The Court does not believe Carlini met his burden as to showing that a false representation was made, or that Carlini's reliance on the alleged false representation was justified.  At trial, the testimony of both Carlini and Naugler revealed that while the restaurant received $10,000 in revenue, the net proceeds were actually quite small.  In fact, Carlini testified that the income statement that was provided to him prior to his initial $25,000 loan showed minimal profit, and he recalled Naugler saying to him "we have

finally turned a small profit." It was the "small profit" that led Carlini to create his own belief that the bills were caught up. Further, Carlini testified that the most important factor he relied on before making his investment was his own "eyeballing" of the restaurant, and "getting caught up in the Hollywood aspect of owning a restaurant." After investing the initial $25,000 but before loaning Naugler the additional $125,000, Carlini testified that he constantly received calls from Naugler asking for money. Prior to loaning Naugler the $125,000, Carlini sent Naugler an email outlining items the loan should be used for. (Carlini's Ex. 6.) Those items included payments for utilities and other bills. See id. The Court finds no evidence that Naugler made any false representations to Carlini.

Additionally, an essential element of a § 523(a)(2)(A) claim is showing that the plaintiff's reliance on the misrepresentation was justified. Sanford Institution for Savings v. Gallo, 156 F.3d 71, 74 (1st Cir. 1998); Field v. Mans, 516 U.S. 59, 61 (1995); accord Palmacci, 121 F.3d 781, 786 n.3 (1st Cir. 1997). "[F]alsity which could have been discovered by senses during a cursory glance may not be relied upon." Gallo, 156 F.3d at 74. In noticing that the restaurant had "only just started to turn a profit," Carlini could have discovered that the restaurant's bills were not caught up. Carlini admitted that the phone calls he received from Naugler requesting money were "red flags," but Carlini offered the $125,000 loan anyway. (See also Carlini Ex. 10.) McGovern testified that "although the bar business appeared to be very good, the restaurant business was basically non-existent," and review of financial records "clearly [indicated] there were more expenses than revenue." Carlini frequented the restaurant and also had copies and access to the restaurant's financial records and bank statements. Accordingly, the Court cannot find that Carlini justifiably relied on Naugler's alleged misrepresentations. Count III is denied.

### D. Count IV: Fraud or Defalcation while acting in a Fiduciary Capacity

Carlini claims that the debts owed to him should be excepted from discharge because Naugler used business receipts to pay for personal expenses, and withdrew large amounts from the business

account for unexplained purposes. Section 523(a)(4) excepts from discharge debts incurred by the debtor's "fraud or defalcation while acting in a fiduciary capacity[.]" 11 U.S.C. § 523(a)(4). In <u>Farley v. Romano (In re Romano)</u>, 353 B.R. 738 (Bankr. D. Mass. 2006), the court addressed the issue of whether a fifty-percent shareholder owed a fiduciary duty to another shareholder within the meaning of § 523(a)(4). <u>Romano</u>'s decision was based on the reasoning applied in <u>In re Frain</u>, 230 F.3d 1014 (7th Cir. 2000). <u>Frain</u> held that "fiduciary capacity for purposes of § 523(a)(4) [can] be established by the existence of a contract and substantial ascendancy of one shareholder over another . . . ." <u>In re Romano</u>, 353 B.R. at 762-63; <u>In re Frain</u>, 230 F.3d at 1018-19. Naugler as a sixty-percent shareholder could conceivably be held to have owed a fiduciary duty to Carlini within the meaning of § 523(a)(4). However, as previously discussed, Carlini has provided little in the way of proof beyond mere allegations that Naugler fraudulently used business receipts. The Court has found the testimony presented to satisfactorily explain the alleged loss of assets. As such, the Court cannot find that the debt should be excepted from discharge under § 523(a)(4). Count IV is denied.

  **II.**  <u>**Naugler v. Carlini**</u>

Naugler argues that Carlini's actions in text messaging, electronic messaging, and telephoning Naugler concerning Carlini's pre-petition claim after Naugler filed his bankruptcy petition constitutes violation of the automatic stay. Section 362(a)(6) prohibits a creditor from "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 362(a)(6). Naugler asserts that Carlini's violation was willful and requests actual and punitive damages. Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." "The burden is on the debtor to prove by a preponderance of the evidence that [he] suffered damages as a result of the stay violation." <u>Heghmann v. Hafiani (In re Heghmann)</u>, 316 B.R. 395, 404-05 (B.A.P. 1st Cir. 2004). The First Circuit has held that

violation of the stay is willful "if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Id.

Carlini testified that he had received notice of Naugler's bankruptcy filing. Further, Carlini stated that he contacted Naugler "a few times," and sent electronic mail to addresses he believed belonged to Naugler. Carlini ceased contacting Naugler, but only after Naugler informed Carlini that the bankruptcy case forbids any creditor contact regarding collection of prepetition claims. Contact by telephone and electronic mail constitute prohibited conduct under § 362(a)(6). Since Carlini received actual notice of the automatic stay, his contact was willful.

For purposes of awarding damages, "[t]he words 'shall' recover indicate that Congress intended that the award of actual damages, costs and attorneys' fees be mandatory upon a finding of a willful violation of the stay." In re Heghmann, 316 B.R. at 405 (quoting Ramirez v. Fuselier (In re Remirez), 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995)). However, a court may award punitive damages in cases where there is "egregious, intentional misconduct." Id. (quoting Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir. 1991)) (internal quotations omitted). The Court finds that Naugler satisfied his burden of establishing that Carlini willfully violated the automatic stay. On the other hand, the Court is not convinced that the testimony and evidence presented at trial warrants an award of punitive damages or emotional damages. Naugler provided inadequate proof of any actual damages. Naugler's attorney has submitted to the Court his fees associated with this adversary proceeding (Naugler Ex. 110). The Court finds that the fees are reasonable. Thus, Naugler is only entitled to an award of attorney's fees and costs in the amount of $1,680.00. See id.

## CONCLUSION

Since Carlini failed to satisfy his burden under §§ 727 and 523, his complaint in Adversary Proceeding No. 08-1106-MWV is denied. Naugler met his burden in establishing willful violation of the automatic stay pursuant to § 362(a). Therefore, the Court finds in favor of Naugler on his complaint in Adversary Proceeding No. 08-1100-MWV. Carlini is required to pay Naugler's attorney's fees in the amount of $1,680.00. The continued trial date scheduled for June 25, 2009, is hereby cancelled. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a final judgment and order consistent with this opinion.

DATED this day 17th day of June, 2009, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge